IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No.:   3:06-CR-126-WHA |
| | ) | |
| JOHN JENNINGS, II | ) | |

### RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS SEARCHES

**COMES NOW** the United States of America, by and through Leura Garrett Canary, United States Attorney for the Middle District of Alabama, and files its response to Defendant's Motion to Suppress, filed on or about September 20, 2006, as follows:

1.   Defendant moves to suppress searches made pursuant to oral and written consents to search given by the defendant on or about April 25, 2006, allegedly in violation of the Fourth Amendment of the United States Constitution.

2.   Defendant maintains that he is mentally retarded and when presented with written consent forms and oral requests for consent to search by law enforcement, he was incapable of understanding the consent form(s) and the oral communications, was unaware of the nature of his actions in signing the form(s) and did not know the consequences of his actions.

### FACTS

3.   On April 25, 2006, at approximately 10:00 a.m. federal law enforcement approached the defendant at the Greyhound Bus Terminal in Houston, Texas. The defendant was carrying a bouquet of flowers, a briefcase, and a white plastic shopping bag.  At approximately 10:15 a.m. the defendant was taken into custody. The defendant was asked for personal identifying information and questioned as to his ability to read, write

and understand what was being discussed. Investigators determined that the defendant was able to communicate appropriately. At approximately 10:20 a.m. the defendant was provided a copy of IS Form 1067, Warning and Waiver of Rights (Attachment A), and was verbally apprised of those rights. At approximately 10:22 a.m., the defendant indicated his understanding and waiver of his rights by signing the Waiver. The defendant then gave an oral statement to law enforcement. At the conclusion of the interview the defendant provided a written statement to law enforcement which reiterated the facts and details he had previously given orally. (Attachment B)

4. During the course of the interview, the defendant: (1) told investigators that he did not own a personal computer and used the library's computer to conduct his internet activity; (2) gave investigators his email address and named his service provider; (3) told investigators that he had used his email account to facilitate the offense for which he is charged; and (4) told investigators that information relating to his having had sex with a thirteen year-old girl could possibly be found in his briefcase.

5. Prior to leaving the bus station, where the interview had taken place, investigators asked the defendant for consent to search the briefcase and plastic bag in his possession at the time of his arrest. The defendant agreed and indicated his consent by signing Form 8193. (Attachment C) The defendant also, upon request, agreed to the search of an apartment at 1516 Bay Area Blvd., Apt. P22, Houston, TX 77058. The defendant signed Form 8193 indicating his consent to search the apartment. (Attachment D) The defendant was taken to the apartment where Suzanne Medrano, the defendant's mother, also gave investigator's permission to search.

6. The defendant was transported to 823 Ramada Drive, Houston, TX, the

residence of his ex-stepfather, Oscar Medrano. The defendant indicated that he had previously used Mr. Medrano's computer to conduct some of his internet communications. Mr. Medrano permitted investigators to remove his computer and consented to a search of his computer.

7.  On 31, 2006, pursuant to an Order of the court, a Forensic Report was filed with the Court in this case. (Document 19.) The Report concluded, in part, that the defendant does not suffer from any major physical impairment, does not suffer from any substance abuse, does not demonstrate any signs or symptoms of a major mental illness requiring psychological or psychiatric intervention, does fall within the borderline range of intellectual functioning (76), and is not mentally retarded.

## DISCUSSION

8.  The government agrees with and adopts defendant's interpretation of applicable law surrounding the Fourth Amendment warrant requirement, including the Supreme Court cases Katz v. United States, 88 S.Ct. 507,514 (1967), and Florida v. Royer, 469 U.S. 491 (1983). Further, the government concedes that at the time the oral and written statements were provided and the searches conducted, the defendant was in custody and subject to interrogation by federal and state law enforcement. The government also agrees with and adopts defendant's statement that he provided written consent to the search of his apartment and personal belongings.

9.  The only question, it seems, left to the Court, is whether the consents to search were, at the time each was given, voluntary.

**Jennings consents were voluntary**

7.     Search and seizure of any evidence on the arrestee's person, in order to prevent its concealment or destruction, is permissible incident to arrest. Chimel v. California, 395 U.S. 752 (1969); United States v. Rosenthal, 793 F.2d 1214 (11th Cir, 1986).

8.     The Supreme Court has explained that voluntary consent constitutes a waiver of an individual's Fourth Amendment rights and that said consent need not be knowing and intelligent. Schneckloth v. Bustamonte, 412 U.S. 218, 235, 241 (1973).

9.     To determine whether consent was given voluntarily, courts examine the totality of the circumstances surrounding the consent. Id. at 227. Courts may consider such factors as knowledge of constitutional right to refuse consent, age, intelligence, education, language ability, degree to which the person cooperates with the police and length of detention and the nature of the questioning. Schneckloth at 226, 227.

10.     The defendant argues that because of his "mental limitations" and because of the complexity of the form, he did not understand the nature of the act/consent and therefore, the search should be suppressed.

11.     The present case is similar to Tukes v. Dugger, 911 F.2d 508 (11th Cir. 1990). In that case consent was given by a defendant of low intelligence, with no knowledge of his right of refusal, who was interrogated at the police station. The Court held that consent was voluntary after considering the totality of the circumstances, to include the facts that the defendant had voluntarily accompanied police to the station and that no evidence of coercive police procedures was presented.

12.     In the present case, there exists no, "...signs or symptoms of a major mental illness that would require psychological or psychiatric intervention." (Doc. 19 , p.4.)

Though the defendant was diagnosed as borderline intellectual functioning, the defendant is not mentally retarded and can understand information that is presented to him in a simplistic, concrete manner. (Doc. 19, p.9 -10.)

13. The consent form used by law enforcement in this case, was read to and by the defendant. The words are simplistic and concrete, and the form itself is not lengthy. The defendant indicated his understanding of his rights pursuant to the Fourth Amendment to the Constitution of the United States. The defendant's assertion that he was unaware of the nature of his actions when he signed the form, is false and not supported by the Forensic Report, the documents or the facts of the case.

14. Finally, the defendant is 22 years old, has held several jobs, graduated from high school, completed a ministry program and became an ordained minister. Additionally, the defendant has had prior contact with law enforcement and tests show that he has a clear understanding of the charges against him, the roles of courtroom personnel, a rational understanding of various legal decisions, and demonstrated..." an ability to express his views, while at the same time considering alternative information and possibilities." (Doc. 19, p.8.) The Consent form consists of simple words and phrases. The documents are neither lengthy nor complex. Additionally, the defendant was in custody at the time his personal belongings were searched, defendant's mother gave consent to search the apartment and defendant's ex-stepfather willingly gave investigator's the computer to search, therefore, regardless, investigator's had the ability to search each of the items and locations that defendant seeks to suppress.

15. Based on the foregoing, the United States respectfully requests this Court deny Defendant's <u>Motion to Suppress Searches.</u>

Respectfully submitted, this the 16th day of October, 2006.

                LEURA GARRETT CANARY
                UNITED STATES ATTORNEY

                /s/ Susan R. Redmond
                SUSAN R. REDMOND
                Assistant United States Attorney
                Post Office Box 197
                Montgomery, Alabama 36101-0197
                334.223-7280
                334.223.7135   fax
                susan.redmond@usdoj.gov

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| v. ) | Case No.:   3:06-CR-126-WHA |
| ) | |
| **JOHN JENNINGS, II** ) | |

CERTIFICATE OF SERVICE

I hereby certify that on October 16, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Kevin L. Butler.

Respectfully submitted,

LEURA GARRETT CANARY
UNITED STATES ATTORNEY


/s/ Susan R. Redmond
SUSAN R. REDMOND
Assistant United States Attorney
Post Office Box 197
Montgomery, Alabama 36101-0197
334.223-7280
334.223.7135   fax
susan.redmond@usdoj.gov