IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

UNITED STATES OF AMERICA           )
                                   )
        v                          )          CR. NO. 3:06cr126-WHA
                                   )          (WO)
JOHN JENNINGS, II,                 )
                                   )
        Defendant.                 )

**MEMORANDUM OPINION AND ORDER**

**I.  FACTS AND PROCEDURAL HISTORY**

This cause is before the court on the Defendant's Objections to the Recommendation of

the Magistrate Judge, filed on March 15, 2007 (Doc. #61).

The facts of this case have been set forth more fully in the Recommendation of the

Magistrate Judge (Doc. #59).  In summary, the Defendant, John Jennings, II ("Jennings"), was

arrested by United States Postal Inspectors on suspicion that Jennings used the mail to

knowingly induce a minor to engage in sexual activity.  Jennings was questioned by Jeff Arney

("Arney"), Postal Inspector, on April 25, 2006, about communications with a person who

purported to be a 13-year-old female.  Arney showed Jennings a *Miranda* Warning and Waiver

of Rights form, and a Sworn Statement with Rights form and asked Jennings to read them to

himself while Arney read them aloud.  Jennings signed those forms and also composed a written

statement.  Jennings was also shown Consent to Search forms pertaining to his bag and personal

belongings, his mother's house, and internet and email accounts found on a computer.  Jennings

signed these forms as well.

Jennings moved to suppress the evidence gained from the searches and to suppress the

statements given to Arney.  Jennings argued that because of his mental limitations, he did not

freely and voluntarily consent to the search of his personal bag,[1] nor voluntarily or knowingly

and intelligently waive his Miranda rights.

The Magistrate Judge held an evidentiary hearing on the Motions to Suppress on

December 7, 2006, and a continued evidentiary hearing on January 30, 2007.   Evidence from

experts was considered by the Magistrate Judge, including a forensic report from Dr. Dana with

the Federal Bureau of Prisons, who performed a competency evaluation of Jennings, and Dr.

Boyer, a clinical and forensic psychologist who examined Jennings with regard to his ability to

understand *Miranda* warnings.

The Magistrate Judge determined that the United States proved that Jennings' waiver of

his *Miranda* rights and consent to search were voluntary and knowing and intelligent, and

recommended that the Motions to Suppress be denied.

## II.  STANDARD OF REVIEW

A district court makes a *de novo* determination of the portions of the magistrate judge's

report or specified proposed findings of fact or recommendations as to which objection is made.

28 U.S.C. § 636 (b)(1).  A district court may accept, reject, or modify the findings or

recommendations by the magistrate judge.  *Id.*  Credibility findings of a magistrate judge, "who

personally observed and listened to the testimony of live witnesses, may be accepted unless the

district judge, in his de novo review, finds reason to question the magistrate's assessment of the

evidence." *Blizzard v. Quillen*, 579 F. Supp. 1446, 1449 (D.Del. 1984).  *De novo* review does

not require a new hearing of witness testimony, but it does require independent consideration of

factual issues based on the record. *Jeffrey S. by Ernest S. v. State Bd. of Educ. of State of*

---

[1] Jennings has not objected to the Magistrate Judge's finding that Jennings has relinquished his motion to suppress as to the search of his mother's apartment, and the internet mail and communication accounts.  Therefore, any evidence resulting from those searches is not due to be suppressed.

*Georgia*, 896 F.2d 507, 513 (11th Cir. 1990).  If the magistrate judge makes findings based on the testimony of witnesses, the district court is obliged to review the transcript or listen to a tape-recording of the proceedings. *Id.*

### III.  DISCUSSION

The court has carefully reviewed the transcripts of the hearings and exhibits, as well as briefs of the parties and the entire file, and finds that there is no need to hold a new hearing of witness testimony.

The Magistrate Judge entered a single Recommendation on the two separate Motions to Suppress.  Jennings did not frame his objections in terms of the two Motions to Suppress, but rather argued that he did not voluntarily execute a *Miranda* waiver or knowingly and intelligently waive his *Miranda* rights.  At the end of the Objections to the Recommendation of the Magistrate Judge, Jennings states both that his confession and that the evidence gained through a search of his personal bag should be suppressed.  The court construes the Objections, therefore, as being raised as to the Magistrate Judge's conclusions with respect to both Motions to Suppress.  For clarity, this court will address separately the Objections in the context of each Motion to Suppress.

Motion to Suppress Statements

Jennings objects to the factual findings made, and the legal conclusion drawn, by the Magistrate Judge that the *Miranda* waiver provided by Jennings was voluntary and knowingly and intelligently provided.  Jennings continues to argue, as he argued in his Motion to Suppress, that, although no physical force or coercion was applied during his interrogation, because the police took advantage of his mental limitations the waivers Jennings signed were not voluntary.

To find a waiver involuntary, "coercive police activity is a necessary predicate."

*Colorado v. Connelly*, 479 U.S. 157, 167 (1986).  The mere fact that a defendant suffers from a

mental disability is not sufficient to render a waiver involuntary.  *Connelly*, 479 U.S. at 169-70;

*United States v. Barbour*, 70 F.3d 580, 585 (11th Cir. 1995), *cert. denied*, 517 U.S. 1147 (1996).

Instead, in the absence of any other evidence of coercion, it must be shown that the police took

advantage of the defendant's mental limitations in securing a *Miranda* waiver.  *Barbour,* 70 F.3d

at 585.

Jennings' factual support for his objection to the finding that his waiver was voluntary is

merely that Arney had seventeen years of experience as a postal inspector and so recognized

from Jennings' demeanor his inability to understand the nature of the written documents

outlining his constitutional protections.

Upon *de novo* review of the entire record in this case, including the transcripts of the

evidentiary hearings, this court adopts the factual finding of the Magistrate Judge that there is

insufficient evidence that Arney took advantage of Jennings' level of intellectual functioning.

There is no evidence that Arney knew of Jennnings' mental limitations.  Arney testified during

the evidentiary hearing that he did not note anything while speaking with Jennings, or during the

course of his investigation, which would have given him a suspicion that Jennings had a mental

handicap or mental difficulty. Tr. 1: pages 33: 21-34: 6.  Furthermore, Dr. Boyer testified, when

asked whether there was information that the postal inspectors knew that Jennings did not have

full understanding, as follows:  "[H]e hears our questions, he makes sense when he answers them

and those are the kinds of things I would assume that they tuned into."  Tr. 2 at page 118: 19-21.

Therefore, upon *de novo* review of the entire record in this case, the court concurs in the

Magistrate Judge's assessment that the United States has proven that Jennings voluntarily

waived his *Miranda* rights.  Such a finding, however, based on the lack of evidence of coercion,

does not complete the analysis. It must also be proved that the waiver was knowing and intelligent. *Moran v. Burbine*, 475 U.S. 412, 421 (1986).

With regard to the requirement that a waiver of *Miranda* rights also must be knowing and intelligent, Jennings argues that the Magistrate Judge failed to reference Dr. Boyer's conclusion that Jennings was not able to understand the nature of the *Miranda* warning, and that he was not able to understand the ramifications of executing the forms. Upon review of the Magistrate Judge's Recommendation, however, it is apparent that the Magistrate Judge expressly noted Dr. Boyer's opinion that Jennings did not understand his *Miranda* rights or ramifications of executing the waiver of rights. Recommendation at pages 5-6.[2] This aspect of Jennings' objection, therefore, is unavailing.

A separate part of the objection by Jennings is his contention that the conclusion that Jennings' waivers were knowing and intelligent is not supported by the record. The Magistrate Judge concluded that the experts who offered testimony in the case disagreed with one another. The Magistrate Judge did not reject as incredible any of the expert testimony, but merely stated that a choice had to be made between the expert opinions. The Magistrate Judge determined, based on Jennings' higher level of functioning and his ability to understand simple and concrete information, and based on the fact that the waiver forms were not complex, that Jennings' waivers were knowing and intelligent.

This court has thoroughly reviewed the evidence presented in this case, including the expert report from Dr. Dana and the transcripts of the two evidentiary hearings. Upon *de novo* review, this court disagrees with the Magistrate Judge's characterization of the record evidence

---

[2] Although the Magistrate Judge does not cite to the pages of the transcript cited by Jennings, the pages cited include Dr. Boyer's opinion that Jennings did not understand the literal meaning of his rights and the implications of waiving them. Tr. 2 at page 32.

in this case as presenting two conflicting expert opinions. The evaluation performed by Dr.

Dana was for the purpose of evaluating Jennings' competency. Dr. Dana offered no opinion as

to Jennings' ability to understand his *Miranda* rights. Dr. Boyer, on the other hand, evaluated

Jennings's ability to understand his *Miranda* rights and the implications of waiving those rights.

Dr. Boyer testified that Jennings understood the concept that he "didn't have to talk," at

the time she evaluated that with him. Tr. 2 at page 85: 25-86:2. Also, when cross-examined as to

whether Jennings understood the concept that he did not have to talk to the police, Dr. Boyer

stated, "At the time that I tested him, yes, he did." *Id.* at page 106: 17-9. It is clear from the

transcript as a whole, however, that Dr. Boyer also concluded that Jennings did not have that

understanding at the time he was administered his *Miranda* warnings. Dr. Boyer was questioned

as follows:

> Q: Okay. So at the time that the rights were given, it was unlikely that he was
> able to comprehend the rights?
> A: That's correct. I don't think he was able to understand them.
> Q: You came to that conclusion based on testing. Could you describe that testing?
> A: I would say it's based on more than just the testing, but the testing certainly
> played a large role in that.

*Id.* at page 25:2-11. When again asked about her conclusion, Dr. Boyer first clarified that the

questioner was speaking of the "time the rights were actually administered," and then stated that

she thinks "it very unlikely that he would have understood just the literal meaning of all of those

rights and the implications of waiving them." *Id.* at page 32: 17-22. Dr. Boyer was also

questioned by the Magistrate Judge as follows:

> Q: Right. In terms of what he understood here, though, you agree he understood
> that he didn't have to talk to the police?
> A: At the time–I question whether he really understood that at the time he was
> actually questioned.
> Q: But you don't have a baseline for that, though, do you?
> A: Well–

Q: Because you don't know, based upon the other information that he got, based on the forensic testing and his arraignment in court, all those other types of things, you don't know what information he would have gathered from that also.
\* \* \*
A. That's true.

*Id.* at pages 101: 23- 102:16.  Dr. Boyer's opinion, based on testing and her examination of

Jennings, was that although Jennings now understands that he does not have to talk to police, at

the time he was given, and waived, his *Miranda* rights, he "was not capable" of understanding

the nature of his *Miranda* rights or the waiver.  *Id.* at page 36: 5-8.  There is no evidence, and

certainly no expert evidence, to the contrary directly on this point.

Another district court within this circuit was recently presented with a similar issue.  In

*United States v. Sutton*, No. 8:04cr325-T-17TBM, 2007 WL 705044 (M.D. Fla. March 2, 2007),

the defendant had low intellectual functioning, but the United States argued that based on the

defendant's familiarity with the criminal process and his ability to answer an officer's questions

without evidence of confusion, there was evidence that the defendant understood the importance

of his *Miranda* rights and his waiver of those rights.  There was expert testimony, however, from

an examining pyschologist that even if the defendant was coherent and responsive during

questioning, he lacked the ability to understand his rights and the implications of the waiver.

The magistrate judge, in a report and recommendation adopted by the district court,  noted that

no contrary psychological evidence was presented, other than a mention of malingering in a

report from the examiners at a federal facility.  *Id.* at \*9.  The court reasoned that although the

question was a "close one," the court could not conclude, based on the defendant's familiarity

with the process and his responsiveness to the officers, in the face of unrebutted expert testimony

that the defendant did not understand his rights, that the United States proved a knowing and

intelligent waiver.  *Id.* at \*10.  This court finds this reasoning persuasive.

In the instant case, upon *de novo* review of the entire record, the court concludes that the

evidence of Jennings' functioning, and Dr. Dana's characterization of his abilities when

presented with simple and concrete information, even combined with Dr. Boyer's testimony as to

his current level of understanding, are not sufficient to carry the Government's burden, in the

face of an unrebutted expert opinion that Jennings did not understand his *Miranda* rights, or the

consequences of waiving them, at the time of his waivers.  Accordingly, the court must reject

that aspect of the Magistrate Judge's Recommendation which finds that Jennings' waivers were

knowing and intelligent.  The Motions to Suppress are due to be GRANTED as to Jennings'

statement to Arney on April 25, 2006.

Motion to Suppress Searches

As stated above, Jennings' objections are framed in terms of the Magistrate Judge's

findings with respect to his purported waiver of his *Miranda* rights.  He does not make any

objections which distinguish between the consent to search and waiver of *Miranda* rights.

Because he does, however, reference the consent issue, by stating that both the statements and

the consent form should be suppressed, the court will also analyze his Objections to the

Recommendation with respect to that portion of the Recommendation which is addressed to the

Motion to Suppress Searches.

A different standard applies to a consent to a search than the standard applied to waiver

of *Miranda* rights.  *Schneckloth v. Bustamonte*, 412 U.S. 218, 235 (1973).[3]   Specifically, a

consent to search must be voluntarily given, but need not be knowing and intelligent. *Id.*  The

---

[3] *Schneckloth* was decided after *United States v. Elrod*, 441 F.2d 353 (5th Cir. 1971), which Jennings has cited for the proposition that consent to search means knowing approval.  The defendant's mental capacity remains a relevant consideration under *Schneckloth*, but the "knowing approval" language in *Elrod* cannot be read, in light of *Schneckloth*, as requiring comprehension of Fourth Amendment rights.

analysis of a voluntary consent is a totality of the circumstances analysis. The Court has rejected

as a requirement for consent to searches "proof of knowledge of the right to refuse consent . . . ."

*Id.* at 232-233. In evaluating voluntariness under the totality of the circumstances, courts

consider "evidence of minimal schooling, low intelligence, and the lack of any effective

warnings to a person of his rights; and the voluntariness of any statement taken under those

conditions has been carefully scrutinized to determine whether it was in fact voluntarily given."

*Id.* at 248. "Voluntariness is a question of fact to be determined from all the circumstances, and

while the subject's knowledge of a right to refuse is a factor to be taken into account, the

prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a

voluntary consent." *Id.* at 249.

      While it is clear that voluntariness is required, it is less clear whether the same standard

of voluntariness is to be applied to consents to search as is applied to *Miranda* waivers. In the

case at hand, the arguments presented in the Objections to the Recommendation with respect to

voluntariness are that Jennings suffered from mental limitations which precluded him from

acting voluntarily. For purposes of this case, therefore, the specific issue presented is whether

the coercion requirement from *Connelly* applies in consent cases.

      In *Tukes v. Dugger*, 911 F.2d 508, 516 n.13 (11th Cir. 1990), the Eleventh Circuit noted

its reservation about applying the *Connelly* coercion standard in the consent to search context.

In *United States v. Barbour*, 70 F.3d 580 (11th Cir. 1995), however, the Eleventh Circuit

reviewed a denial of a motion to suppress where the defendant argued that because of severe

depression and medication he did not act voluntarily in giving a statement to law enforcement or

in consenting to a search. The court noted that the fact that a defendant suffers a mental

disability does not render a waiver involuntary without coercion by an official actor, citing

*Connelly*.  *Id.* at 585.  In its analysis, the court did not distinguish between the waiver of

*Miranda* rights and the consent to search aspects of the motion to suppress, but held that "absent

any evidence of psychological or physical coercion on the part of the agents, there is no basis for

declaring [the defendant's] statements and consent to search involuntary." *Id.* at 585.[4]   The

*Barbour* court may not have expressly stated that it was applying *Connelly* to the voluntariness

of consent analysis, but the application of *Connelly* is implicit in its holding.

       Application of *Connelly* to consent searches is not inconsistent with *Schneckloth* because

both cases analyzed voluntariness in part under a Fourteenth Amendment standard. *See*

*Scheckloth*, 412 U.S. at 248 (stating "the Fourth and Fourteenth Amendments require that it

demonstrate that the consent was in fact voluntarily given, and not the result of duress or

coercion, express or implied."); *Connelly*,  479 U.S. at 167 (holding "that coercive police activity

is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of

the Due Process Clause of the Fourteenth Amendment.").   Therefore, based on the language of

the holding in *Barbour*, and based on the fact that reading *Barbour* to apply *Connelly* to a

consent to search is not inconsistent with Supreme Court precedent, this court reads *Barbour* as

applying *Connelly* in the consent to search context.  *See also United States v. Quezada*, 944 F.2d

903 (4th Cir. 1991)(unpublished opinion)(applying *Connelly* in a consent case); *United States v.*

*Amery*, No. 02CR143, 2002 WL 31027514 (S.D. N.Y. Sept. 10, 2002)(same); *but see United*

---

[4] The Magistrate Judge's Recommendation states that the same voluntary, knowing, and intelligent standards apply to consent and to waiver, citing *Barbour* and *Connelly*.  While the *Barbour* court did discuss the knowing and intelligent inquiry without differentiating between the waiver of *Miranda* rights aspect of the motion and the consent to search, the holding at the end of the discussion of the knowing and intelligent waiver requirement was that the defendant was aware of the nature of the rights and the consequences of waiving them, with no mention of the consent to search.  *Barbour*, 70 F.3d at 586.  Therefore, the court declines to adopt a rule, contrary to that in *Schneckloth*, that a consent to search must be knowing and intelligent.

*States v. Hall*, 969 F.2d 1102, 1108 n.6 (D.C.Cir. 1992)(a pre-*Barbour* case noting *Tukes* as a case which had declined to apply *Connelly* to consent cases).

In the instant case, as stated above, only one issue has been raised in the Objections to the Recommendation of the Magistrate Judge as to voluntariness, and this court has concluded previously that there is no evidence of police coercion because there is no evidence of Arney's knowledge of Jennings' mental inabilities.  Applying the standard applied by the Eleventh Circuit in *Barbour*, that there is no basis for finding Jennings' consent to search involuntary "absent any evidence of psychological or physical coercion on the part of the agents," this court finds, under a totality of circumstances, that the United States has sufficiently established that Jennings' consent to search was voluntary, and the evidence gained from it is not due to be suppressed. *See also United States v. Better*s, 229 F. Supp. 2d 1103 (D. Ore. 2002) (finding that statements were due to be suppressed because waiver was voluntary but not knowing and intelligent, but that evidence gained from a search was not due to be suppressed because consent was voluntary where there was no showing that officers took advantage of defendant's intoxicated state or mental illness).

### IV.  CONCLUSION

For the reasons discussed above, it is hereby ORDERED as follows:

1.  The Defendant's Objections to the Recommendation of the Magistrate Judge are OVERRULED as to the Magistrate Judge's finding of voluntariness and SUSTAINED as to the Magistrate Judge's finding of knowing and intelligent waiver of Jennings' *Miranda* rights on April 25, 2006, and the Recommendation is adopted with that modification.

2.  The Defendant's Motion to Suppress Statements (Doc. #27) is GRANTED and the statements given in response to police questioning on April 25, 2006 are suppressed.

3.  The Defendant's Motion to Suppress Searches (Doc. #26) is DENIED.

Done this 1st day of June, 2007.

/s/ W. Harold Albritton
W. HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE